We will hear argument first in number 15-12-16, Diamond Sawblades Manufacturer against the United States, Mr. Grimson. Good morning, Your Honor, and may it please the Court, Jeff Grimson for Appellant Hyosung. I'm also giving the direct presentation for a co-appellant. Counsel, speak up a little, would you please? Sure. I'm giving the direct presentation for Appellant Hyosung as well as co-appellant Awa, who will do the rebuttal for the appellant side of the case. In 2007, Commerce discontinued zeroing and anti-dumping investigations. Our Sawblades case was not completed in 2009. As a result, Commerce included five words of computer code that cost our client importers millions and millions of dollars. When Commerce started the process of changing the law to eliminate zeroing in 2006, they said it would be effective for petitions initiated after publication of the final modification. But they went away from that and went more broad in the final modification, where they made the change effective for all investigations pending before the department. That's in one part of the final modification notice. And in the second part, they said it would apply to, quote, all current and future anti-dumping investigations as of the effective date. These terms aren't defined in the notice. Ongoing, pending, current. Well, Commerce's regulations help us understand how Commerce's proceedings operate, and they're very clear. So the summary says that the schedule for implementing the change is found in the timetable section. And that's the sentence that does not have the phrase before the department. But that still leaves open what exactly this phrase is supposed to mean. And then one starts looking for, I guess one could call them clues, about what it means. And the first thing you get is this slightly different language in the comment section. That language itself is not terribly clear, but what's awfully precise are the two statements that this is meant to apply, except for future proceedings, only to seven petitions and only to petitions filed after March 6, 2006. Those are two very strong clues. And so my question is, when everything else is actually not that clear, how is it that we don't defer? Well, first, Your Honor, I would read the timetable section as the operative timing section of this notice. And this is after notice and comment, where the United States went through this torturous process of adopting WTO panel hearing. The three paragraphs that you're referring to in the middle, the first, second, and third, that mention the seven pending cases, that is explanation of why it was fair to make this retroactive, which is a big deal. It's the only Section 123 change in the law that's been made retroactive. What I really want to understand is how do you get beyond a recognition of ambiguity, uncertainty, imprecision in any of the language which, if it exists, then requires us, doesn't, tell me, do you think it does require us? If one found uncertainty, does it require us to defer to the Congress's interpretation? Well, this is something that is a big hole in the Court's decision below, because there is an eighth case that Commerce applied this final modification to. That's not one of the seven, and all parties agree that the case on polyvinyl alcohol from Taiwan was off at the Court, just like Sawblades, at the time this notice was published. But in that case, there was no final determination made at Commerce. That's correct, but the regulatory end of the case occurred after the final modification. By regulatory end, I mean what does the regulation say is the end of a case? They say it's the publication of an order. The idea that while that case was a little bit earlier in the process than Sawblades, there's really a lot of post hoc explanation that you will not find on our administrative determination anywhere. That is the very kind of post hoc reasoning that you do not need to defer to under our and the Supreme Court's Christopher case. It is a litigating position entirely. But there are distinctions. That's the point I'm trying to make. There are distinctions between the facts in that case and the facts in your case. We spent a great deal of time in our brief pointing out how those are distinctions without a difference. For example, unlike in polyvinyl alcohol, we actually argued the Section 123 change of zeroing in our briefs at the administrative level. Commerce just didn't address it. They said this is premature. Nobody argued anything in polyvinyl alcohol and commerce applied the change because it came back for publication of the anti-dumping order after the final modification was issued. The regulation is very clear on what is the beginning and end of a case, an investigation of the commerce. I'm just not remembering very well. When commerce decided to apply the new policy to polyvinyl, did it say it was doing that because that investigation had in fact been pending as of January 2007 or February It was newly pending when it came back, having died a premature death earlier. Commerce's notice in polyvinyl alcohol has zero discussion of why they had discontinued zeroing in that case. Nothing. Again, I don't remember and I can ask the government. Is it the government's view now or what would be wrong with the view that the polyvinyl investigation was newly pending when it returned in whatever year it returned, but well after February 2007? That takes a great leap beyond what we consider has the force of a regulation. This notice after public comment, notice and comment, the 123 change, that is reading an awful lot into that that was not expressed in that notice and was not expressed in polyvinyl alcohol. But there's no doubt that the final modification applies to new investigations. So why wasn't polyvinyl when it returned a new investigation? Well, that brings up a point that I'd like to discuss, which is aren't we also, you could argue about whether we were pending before at the time of this 2007 notice, but you can't argue that we were current and future when the case came back for the anti-dumping order to be published in 2009, for it to be amended in 2010, and again in 2014. Three further bites at the Apple Commerce had, and it wasn't until the order was published that the case was actually finished under Commerce's own regulations, which clearly defined the beginning and end of a case. The beginning 351.102.30, Commerce's regulation says a case begins on the date of publication of initiation and ends at the earliest of, and we have two of these actually, termination due to a negative, I'm going to paraphrase, due to a negative ITC, we had that one, the case stopped and went off to the court, but then it came back to Commerce for its second life, and it didn't end until publication of the order, that 351.102.30, little Roman numeral four. So, I mean, to me the question is really for government's counsel, when you published that anti-dumping order in 2009, what segment of the proceeding were you publishing that order in? It has to be in the investigation. It wasn't in administrative review, which is another segment of the proceeding. The dumping cases are like chapters in a book. The book is Diamond Sawblades from Korea. The chapters are investigation, review, change circumstances review, sunset review. We didn't finish chapter one until after Commerce changed the law, pursuant to a loss of the WTO, that Commerce went through the steps that were missing in the core stall case, where you said we're not going to get into giving full recognition to international obligations because Commerce hasn't gone through those steps. Now they have, and they tended clearly to make the final modification applicable more broadly than just to new petitions, which is what they started with. So we believe you shouldn't leave the ninth case out in the cold and let them apply to an eighth case, which clearly diverges from their explanation. Is the universe that is potentially on the table, if your position prevails here, nine or is it a lot more than nine? Is this basically the only case that's going to raise your question? ITC negatives that get turned around in court and come back for an order are exceedingly rare. It just happens that there are two of them in this case, the PVA case, which died a premature death and then came back, and our case. We are not different from PVA in the sense that under Commerce's own regulation, the case did not finish until the anti-dumping order was published. I don't think that's quite responsive to the question. The question is how many cases like yours have caught in this swing? I think there's the seven that Commerce mentioned that we all agree on, PVA, which they applied the new change to, and us. Well, the seven that were referred to were pending before Commerce, correct? They were pending because of the fair market determination, not the injury determination. How many other cases were pending before the ITC at that time that had not been finalized? I do not know, but those would have been within Commerce's count of the seven. Because, again, the regulation is set up when a case begins and ends. If a case begins at the Commerce Department, so it would have been counted in the seven, that means it also began at the ITC. You see they filed it both on the same day. I'm not aware that there is any more than the nine total cases that we're talking about here. Counsel, I couldn't find in the materials any indication of what's really at stake in this. Is it a whole big bunch of money, or what's going on? I mentioned in my introduction that for our one client's importers, Hyosung, we were talking in excess of $5 million because there are five words in a computer code that Commerce, all they have to do is delete. How do we know that? Because they actually did it a few years later when the second WTO case came down and says, now you really have to do it. They removed those five words. Our client was not dumping. AOL was not dumping. They were never dumping during this time but for the zeroing. I see I'm well into my colleague's rebuttal time. We'll restore that time. Thank you very much. Mr. Swerdloff? Good morning, Your Honors. May it please the Court. Before I get into my argument, I thought that I might address very quickly the question that the Court posed to my colleague, which is how many proceedings are in a similar posture as Diamond-Soblitz. In particular, I take the question to be how many proceedings had a final affirmative determination or a final determination by the Department of Commerce but no order until after the 123 proceeding. If that is the question. That is my question, yes. The answer, I believe, is that there were 15 proceedings where the 123 section basically bifurcated at that point between the final determination and the order. The Diamond-Soblitz is the only one that was appealed and that was litigated. I believe the other cases have now been, the time for litigating them has passed and the decisions have become final. So as Judge Toronto characterized it, we have another clue as to what Commerce meant when it talked about pending before the Department that was not the cases where there was no final determination by Commerce, where there was something pending before the ITC. That's absolutely correct, Your Honor. The 15 cases that I just referred to were not included in the count of the seven that the Department characterized as pending before it. The term pending before the Department, as Your Honor's question recognizes, does suggest determinations in which Commerce had not issued a final decision. We know that from four different sources. Did the Department recognize at the time they wrote these conflicting rules that there was a problem here or were you totally unaware of it? You could have dealt with it by using a simple statement like until final determination or something simple and then we wouldn't go through all this. Was there no recognition of the fact that there had to be a transition? I think at the time that this determination was made and Commerce decided on which language to use, it felt that it was being very clear. Now, obviously, I believe that Commerce felt that it was being very clear when it wrote this language. Now, as this Court is aware, the Diamond Saw Blade litigation has a very unique procedural history and certainly unexpected things happened that raised the question about what this language means in this context in a way that it was not raised for the other 15 investigations. But we do know that there are at least four different sources, I think, that confirm that pending before the Department really does mean... Can you talk about the PBA situation and how that... What is the basis on which you... No, Your Honor. I do not think it can be characterized as pending in the... Well, I'll say this. The case had... Depends on what you mean by pending, doesn't it? It does depend, Your Honor, absolutely. I think that's when we get into the inquiry of sort of the supporting evidence about what pending really means. Well, I'm trying to understand, I guess, what your theory is for accommodating what Commerce did. And I guess it seems to me there are two possibilities, but tell me maybe I've missed some possibilities. One is it was pending at that time. The other is it was new when it came back. Our operative theory, Your Honor, is that investigations in which there had not been a final determination are subject to this policy change. Because they're pending? Either because they're restarted afterwards or because they're pending. You will recall, Your Honor, that the policy change... It wouldn't have been started. I mean, I assume there's some sense in which the preliminary stage is all part of the same investigation and you don't go back and start a new one and do another preliminary stage. So it would be odd to say that it was a new investigation when it came back. Yes, Your Honor. So don't you have to say that the PVA investigation was pending before Commerce in... I'm not sure what the... I guess it would be the initial effect of January 2007 and February 2007 with the extension. Yes. I think, Your Honor, the most reasonable reading is that it was pending. The only reason I hesitate is because PVA, like Diamond Saw Blades, has a very unique procedural history and Commerce itself did not, in the notice of the preliminary determination and the final determination in PVA, was not clear about whether the investigation was characterized as pending or not. And I think, really, the court... The PVA investigation is not before this court. No, but it colors what is a reasonable interpretation of this language. I mean, if one truly cannot fairly say that PVA was either new when it came back or pending when it came out, then it seems to me there's a giant question about what this pending means or maybe even there's an answer, which is as long as the investigation hadn't reached finality, then it was pending in front of Commerce. And I think the latter position is the one that we take, Your Honor. All I was trying to explain... No, no, no. I meant that as a distinctly unhelpful characterization. Not final before Commerce, but that the whole investigation had not reached finality, namely, and order no longer appealed. I'm sorry. I misunderstood the characterization, Your Honor. Thank you for assisting me. I certainly had no intention of doing that, Your Honor. I apologize. No, what I meant to say is that our operative criteria is whether the Department of Commerce had reached a final determination. And what I was trying to explain was... I'm struggling to fit that into your pending language, if it includes PVA. I think the easiest way to reconcile the PVA investigation is to say that it was pending because there was no final negative determination, there was no final affirmative determination, there was not even a preliminary determination in PVA until well after the policy change was published. Why did you hesitate, as I think you maybe even more than hesitated several times, when I think I asked you whether that investigation was pending in January and February of 2007? And you said no. Your Honor, my hesitation reflected the fact that I don't think the court needs to necessarily decide that. In my view, I understand that the court, I think, believes that the PVA investigation colors the interpretation of the pending before commerce language in a way that, to a greater degree than we thought and that we discussed in our briefs. And so my hesitation was simply an attempt to explain that, in our view, our position is that really either characterization would work. And I hesitate to speak about another determination in which commerce, which is not before this court, and in which commerce's language can be interpreted in different ways. The reality is- I'm a little surprised at your comment that, you know, you hesitate to talk about the proceeding that's not before the court. It seems to me that the PVA issue is sort of the biggest weakness in your position. And you have to know that coming into this argument. Your Honor, perhaps- All of the other arguments are all about what do the words mean? Are they ambiguous or not? How ambiguous are they? What could they possibly cover? And it's hard to say that the words have a sufficiently definitive meaning that compels an outcome that would support the appellants here. Because if there's ambiguity, then we defer to commerce's interpretation. But then, enter stage left PVA. And it seems to me that's a big, big issue. And for you to say that, well, you hesitate to get into that. I'm a little surprised. Your Honor, I did not mean to say that I hesitate to get into it. I think my comments, perhaps inartful, meant to reflect the fact that, in our view, PVA is not a big weakness because there's a very easy analytical way to reconcile it with the policy change and with what commerce has done. And that is that commerce's language and commerce's discussion in the policy change, after it says we're going to apply this policy change to proceedings pending before the department, and then it discusses what it means by that. One of the things it talks about is proceedings in which it has not, commerce has not yet issued a final determination. And PVA fits very comfortably with that characterization, within that characterization. To us, I think it is analytically very easy. We don't have a preliminary determination. We don't have a final determination in PVA until well after Section 123. And in that way, the PVA investigation is markedly distinct from this case, where commerce did issue a final determination. I think I'm sort of harping on the same thing. Everything that you just said seems, I don't mean everything, but most of what you just said seems a perfectly reasonable characterization of whether there was an open, a final determination. But it seems to me that you have to be able to say, unless you tell me it doesn't matter if there's inconsistency, you have to be able to say, and therefore the PVA investigation was pending in January of 2007, before the department. And, Your Honor, we would take the position that, therefore, because there was no final and no preliminary, the PVA investigation was pending before the department in January 2007. That is the position that we take. In our view, the Court need not necessarily reach that question to reconcile the PVA investigation, because in some sense, when the PVA investigation started doesn't matter. What matters is when the final determination was made. In other words, the most reasonable way to read commerce's language in the policy change is, if there's a final determination that occurs after the policy change notice, then the policy change applies. But to the extent that the Court feels that we do need to reconcile the, to take a firm position on the PVA investigation, our position is that the PVA investigation was pending before commerce in 2007, because there was no final determination. I see that I don't have a lot of time. I would just like to mention that, in addition to the PVA we have, and the language of the policy change, we have three other sources from which we know that the term pending before the department refers to investigations in which there was no final determination by the department, because it is the final determination by the Department of Commerce that's operative. We know that from commerce's statements in other administrative proceedings involving saw blades, and in particular in the case Advanced Technology and Materials, commerce actually provided an explanation and an articulation of its interpretation of the policy change language with respect to the diamond saw blades investigation. That was a case in which the trial court relied in reaching its own decision. The citation for that is Advanced Technology and Materials, 2011, Court of International Trade, Lexis 104. We also know that from the statute. If you try to wrap up, we unfortunately have four arguments, so we need to keep to time. I apologize, Your Honor. Two more points. We also know that from the statute, because the statute makes a final determination appealable, and therefore a final determination by the Department of Commerce, a final affirmative determination carries finality. And we also know that from the precedent of this court, the mandamus litigation, which, broadly speaking, stands for the proposition that administrative determinations should become effective and become effective at the time they're issued, not upon the effectuation of later order. With that, Your Honor, we respectfully request that the courts affirm the trial court's decision. Thank you. Mr. Pickard, is that how you say it? That's how I say it, Your Honor. Good morning, Your Honors. Dan Pickard on behalf of the Diamond Saw Blade Coalition. Am I remembering right, you're not much interested in standing here and defending the PVA result? I am not particularly interested in defending the PVA result. I don't believe it's necessary to do so. I think there's three ways that the court could address PVA in order to reconcile it in our favor. First off, it's distinctly possible that the department was incorrect in PVA. It's not a binding decision, obviously, on the department. And I'm mindful of the fact that clearly it bears on the reasonableness of the department's action. But it is entirely possible that the department got PVA wrong, and yet its interpretation of ongoing or pending in the Diamond Saw Blade matter is still reasonable and should be upheld. I think it's also possible, you were talking, I'm sorry, Your Honor, had referenced newly pending or in the terms of the final modification, a future case. I think there's a reasonable interpretation where PVA could be a future case in a way that it's distinct from Diamond Saw Blades. The fundamental fact is there was a final determination. There was non-ministerial action to be taken on remand. Is that? Exactly. That's exactly right, Your Honor. In Diamond Saw Blades, you had a final determination months before, a final determination by the Department of Commerce, published in the Federal Register, months before the policy was changed. There were ministerial changes that were made later, but purely ministerial. PVA was restarted again, not as a term of the arts, subsequent to the policy change, and an investigation was required. Consequently, I think it could be permissibly viewed as a future case consistent with the policy. I think it's probably most appropriate, and I would echo the arguments made by the government, probably best viewed or most appropriately viewed as pending in that no final determination had been made yet. That's distinct from Diamond Saw Blades. When PVA came back before the department, questionnaires were issued, parties submitted briefs, it went to a preliminary determination, it went to a final determination, and consequently could be viewed either as a pending or a future case in a way that Diamond Saw Blades clearly was not. All briefs had been submitted, determination had been made, the determination had been announced and had run in the Federal Register. Approximately seven months later, the policy change happens. I think you probably had something you wanted to say that was different from answering. Actually, what I wanted to say was most of our arguments dovetail into the departments, and unlike many FLE intervenors, I don't feel the need to be redundant. I would perhaps offer two points of clarification. Refreshing. Rare. And then have you answered any questions? I would say one in regard to a minor point in regard to any arguments in regard to post hoc rationalizations, it should not be surprising that the Diamond Saw Blade decision did not discuss in more detail a final modification that had not yet happened. And it's somewhat disingenuous to argue that arguments now made in regard to this are post hoc. But I think most importantly, at the end of the day, as a factual matter, there's no argument that the Department of Commerce had made and published its final determination months before there was a final modification. And I would suggest respectfully that to the extent that there's really any ambiguity in regard to the ongoing or pending, there's a long line of cases, Michael Storrs, indicating that the department deserves deference in this regard. And that being said, happy to answer any additional questions. Thank you. Thank you, Your Honors. Thank you. Good morning. Mr. Fardow. Mark Fardow for EWA. Many of the arguments we've heard this morning from appellees have focused on the two points. Number one, that they believe that the operative term we should be discussing is pending before the department. And as we've noted in our brief and I think is very clear in the final modification notice, that's incorrect. The department has used interchangeably three separate terms. They've used the term pending. They've used the term ongoing. And then in the timeline, in the very last sentence, they've stated that it will apply to all current and future cases. All of these terms have been applied interchangeably without any definition to aid us in what we're attempting to discern right now. Isn't that a quintessentially ambiguous situation? Well, what we do know, Your Honor, is by using the terms interchangeably, the department believes that they are, in fact, synonymous. So it is not appropriate to try and determine what the meaning of these are simply by focusing, as the government would like you to do, on the one term pending before the department. Now, the government's other argument is that if we look purely and squarely at pending before the department, it's very clear they believe that pending before the department means any case prior to the final determination. And we believe that there's absolutely no basis to make that finding. First and foremost, as this Court noted, if that was, in fact, the department's intent, it begs the obvious question, why did the department not simply say that the effective date would be triggered by those cases by the final determination? That is a notice that is published in the Federal Register and would provide a date certain for all cases. And thus, there would be absolutely no ambiguity. We also believe that in this instance, because there is a question about what all of these various terms mean, perhaps it's also more instructive to look at the opposite. If you look at these three terms, pending, ongoing, current, and future, what you can reasonably discern is that, first off, these are absolute terms. They are not terms of degree. A case is either pending or it is not pending. It is either ongoing or it is not ongoing. So the opposite of this would be a final case, a case that is final. And as we've noted and as my colleague, Mr. Grimson, discussed, it is very clear from the department's own regulation, it defines the beginning and ending phases of the investigation segment of a proceeding. And it states that the investigation segment of a proceeding begins with the publication of the initiation notice and it will then ultimately end with the publication of the anti-dumping order. There is no dispute among the parties that the anti-dumping order, in this case, was published well after the effective date. So the question remains obvious. When that order was published, in what segment of the proceeding was it published? You know, we often get cases in which the interpretation of a vaguely written policy or regulation, even a statute, has significant impact on how people acted. That is, there were actions in reliance on the way this rule was written and they interpreted it differently. There's no reliance in this case, is there, in the sense that you all didn't rely on the way they later wrote this rule. This is a pure post hoc negotiation for recovery of money. Do I have that right? Well, Your Honor, there is certainly no reliance in the sense that when my client and my colleague's client were respondents in an anti-dumping investigation, they had no choice but to cooperate. Their actions were dictated by the fact. Which had started long before this whole process started. Yes, but then subsequent to that, we were then required to participate in subsequent review proceedings where we felt that in accordance with the law, as should have been applied at the time to this case, we should not have been found to have been dumping in the first place, in which case none of this would have occurred. And I think that that's very significant, is that the government is stating that if there is ambiguity, that they should have deference, but deference is not owed to arbitrary action. And I think that there's a great deal of concern about the way that they attempted to distinguish our case from PBA. This is, I think, picking up on Judge Plager's point. Does this case involve imports that your clients made before this policy took effect or after the policy took effect? That's, I think, the kind of reliance that Judge Plager was asking about. That is, you thought, oh, the rule was this. We, therefore, can import at these prices without worrying about it. And then suddenly it turns out the rule isn't that. That doesn't seem to be what's going on. No, Your Honor. I don't believe this case fits squarely in that mold. Nonetheless, it does not. It does not. But, again, I think you have to look at the relative positions of the parties. And if you are a respondent in an anti-dumping proceeding, be it an investigation or a review, it's not really your question or your position to determine what's happening. You are responding to the allegations of dumping that have been leveled against you. And that's a very, very costly allegation to defend against. And, obviously, if there is a finding of dumping, it becomes even more costly. As Mr. Grimson noted, we're not up here just speaking about hypotheticals for an academic purpose. There's millions of dollars involved. Does the application of the zeroing rule change you from dumping to non-dumping? Correct, Your Honor. Correct. So it's not just a – This is certainly not academic, Your Honor. We are of the belief that since this is the law that should have been applied, had it been applied, then the appropriate finding and the calculations would prove this to be true would be that E.Y. would be found to be de minimis and, therefore, excluded from the anti-dumping order in perpetuity. So this is clearly a significant issue. Okay. Thank you. I think we need to move on. We have no argument. Okay.